### NOEL THOMPSON V. STATE OF NEBRASKA.

FILED DECEMBER 30, 1925. No. 24674.

Criminal Law: ADMISSIONS. Where a person is informed against for the commission of a crime and, while under arrest, is interrogated, in respect of apparently compromising facts which tend to show guilt, by one who is properly connected with the prosecution, it is imperative that, before an alleged admission may be received in evidence, it must ordinarily be shown that the statements of the accused were voluntary, and the reception in evidence of such statements, without proper foundation, is ordinarily reversible error.

ERROR to the district court for Morrill county: P. J. BARRON, JUDGE. *Reversed.*

*L. L. Raymond* and *T. F. Neighbors,* for plaintiff in error.

*O. S. Spillman, Attorney General,* and *Lloyd Dort, contra.*

Heard before MORRISSEY, C. J., DEAN, DAY, GOOD, THOMPSON and EBERLY, JJ.

DEAN, J.

Noel Thompson was charged in Morrill county with stealing a two-year-old steer of the alleged value of $50, and the jury returned a verdict of guilty. Thereupon he was sentenced to serve a term of from two to four years in the penitentiary. He prosecutes error to have the record reviewed.

Peter Thompson is defendant's father. He testified that on July 26, 1924, he and his son, Noel, left his ranch with 10 head of cattle to take them to the Douglas ranch, which is about 30 miles southeast of Alliance. This bunch of cattle was made up of animals that were uneven in size and color. When they got the cattle started on their way, Peter left them in charge of Noel to be by him driven to the Douglas ranch. But it appears from Peter's evidence that when they left his ranch they encountered several herds on their route, and that, in driving through them, it was difficult to keep the strange cattle from getting into his herd, and that this troublous situation was a continuing annoyance and kept them busily engaged. He further testified that, after he assisted in giving the cattle a good start, he returned to his home, leaving them in charge of his son for the remainder of the drive.

From defendant's evidence it appears that, on the day of his arrest, he was taken into a vacant room in the courthouse and interrogated by a paid detective. He testified: "They took me in there and asked me how many head of cattle we started with, and I told them 10 head. They started talking about a red steer, and I told them, yes, there was one red steer a little smaller than the rest in the bunch that my dad had bought for $5. Mr. Davis (the sheriff) got up and come out in here (the courtroom) and took off his coat, and while he was out," the defendant, continuing, said he was kept in the room by the detective for about two hours, and that he then "went out and took off some brown garment, a coat or something, and he came back in, and then he threatened—Q. Did he have a gun with him? A. Yes; he had a gun in his holster, and he put his hand

on his gun and says, 'We can make you talk.' "

The detective testified, over objection, that he talked to the boy in the room in the courthouse the day of the arrest "probably an hour," and that he "said quite a little to him. I talked to him quite a bit." He did not deny defendant's statement that he had a gun on his person. He merely said he did not remember.

The briefs and the oral arguments of the parties disclose that Peter Thompson was also informed against for the theft of the same animal that is here alleged to have been stolen by his son, Noel, but Peter was tried at another time and was acquitted by the jury. Defendant's counsel contend that the proof in the present case does not reasonably tend to connect Noel with the offense with which he is charged. An examination of the evidence shows, in the present trial, that the verdict does not seem to be clearly supported by the evidence, and that the case seems to come within the rule recently announced by us where we said in substance that, where the evidence is insufficient to sustain a verdict, the judgment is for reversal. *Larson v. State*, 110 Neb. 620.

The rule is that, where a person is informed against for the commission of a crime and, while under arrest, is interrogated, in respect of apparently compromising facts which tend to show guilt, by one who is properly connected with the prosecution, it is imperative that, before an alleged admission may be received in evidence, over objection, it must be shown that the statements of the accused were voluntary, and the reception of the evidence of such statements without proper foundation, over objection, as in the present case, is ordinarily reversible error. *King v. State*, 108 Neb. 428. It is known to everybody that it sometimes regretfully happens that an innocent person, who is accused of a criminal offense, might be harrassed into the use of compromising language which, on trial being had, may seem to bear such resemblance to a confession as to result in conviction. And the compromising language is often resorted to by the accused, perhaps in the hope of obtaining

leniency, or even to avoid present annoyance. Anyhow, defendant was not on a footing with his keen interrogator, a mature man, an experienced detective, in that back room courthouse colloquy. He was a mere boy, who had just turned 21 years of age, and his evidence shows him to be a callow youth at that, who was, confessedly, not even informed of the fact that whatever he might say to his adversary, against interest, would be used against him at the coming trial. It follows that, in view of the foregoing, the judgment must be and it hereby is reversed, and the cause remanded for further proceedings.

REVERSED.

Note—See notes in 18 L. R. A. (n. s.) 796; 50 L. R. A. (n. s.) 1084; 1 R. C. L. Supp. 202; 4 R. C. L. Supp. 41.